**IN THE COURT OF APPEALS OF IOWA**

No. 18-1297
Filed December 19, 2018

**IN THE INTEREST OF A.V.,**
**Minor Child,**

**A.V., Mother,**
  Appellant.
_____

  Appeal from the Iowa District Court for Benton County, Barbara H. Liesveld,

District Associate Judge.

  A mother appeals the termination of her parental rights. **AFFIRMED.**

  David R. Fiester, Cedar Rapids, for appellant mother.

  Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant

Attorney General, for appellee State.

  Raymond P. Lough, Vinton, guardian ad litem for minor child.

  Considered by Tabor, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

A mother appeals the termination of her parental rights to her child.[1]  She contends the State failed to prove the statutory grounds for termination by clear and convincing evidence, termination is not in the best interests of the child, a statutory exception to termination should be applied, and the juvenile court erred in declining her request for additional time to work toward reunification.

**I.      Background Facts and Proceedings**

The Iowa Department of Human Services (DHS) became involved with this family at the time of the child's birth in a Minnesota hospital in October 2017, at which time the mother tested positive for several illegal substances.  She readily admitted to using methamphetamine and marijuana during her pregnancy.  The mother testified she did not learn of her pregnancy until about two weeks prior to the child's birth.  The child tested positive for methamphetamine, amphetamines, and THC.  Two days after the child's birth, the mother left the hospital against medical advice and returned to Iowa.  She left the child at the hospital and did not return until the child was discharged from the hospital more than a week later, when she accompanied a DHS worker to transport the child to foster care.  The child was removed from the parents' custody on October 18 and was adjudicated a child in need of assistance (CINA) on October 24.  The mother previously placed another of her children for private adoption.

The mother has a long history of substance abuse covering roughly fifteen years.  Prior to these proceedings, she had never received treatment for her

---

[1] The father's parental rights were also terminated.  He does not appeal.

substance abuse. In its adjudicatory order, the juvenile court ordered the mother to submit to random drug testing and undergo a substance-abuse evaluation. She tested positive for amphetamines at an October 30 substance-abuse evaluation. DHS attempted to obtain samples for drug tests from the mother on eighteen different occasions between late October 2017 and early March 2018. During this period, DHS was only able to obtain a sample from the mother on November 7, which tested positive for methamphetamine. Following the substance-abuse evaluation, it was recommended that the mother participate in outpatient treatment, but she did not show up for her admission appointment on November 2. The mother reported for outpatient treatment intake on November 20, but she subsequently failed to attend group therapy appointments and was discharged from outpatient treatment for failure to attend. The mother obtained a second substance-abuse evaluation in January, at which time she tested negative for drugs. Again, however, the mother did not follow through with recommended treatment.

On March 13, as a result of the mother's lack of progress, the juvenile court directed the State to file a petition for termination of the mother's parental rights. Thereafter, the mother began consistently attending substance-abuse treatment. She tested negative for drugs on March 16 and 26 and April 10. The results of another drug test the mother submitted to were pending at the time of the termination hearing in late May. Throughout the life of these proceedings, the mother has been generally consistent in attending visitation with the child, with some exceptions and tardiness issues. At the termination hearing, the DHS case worker testified the mother has been doing "fantastic" in the last two and a half

months. She stated the mother has supervised visitation with the child three or four times per week, there are no parental- or supervision-related concerns during those visits, and she is open to suggestions from providers and the foster mother. Yet, the mother has not progressed beyond supervised visitation. The DHS worker testified she was considering allowing the mother to start exercising semi-supervised visitation with the child, pending the results of the drug test administered before the hearing. The DHS worker additionally indicated the mother was complying with the case plan at the time of the termination hearing. The mother testified at the termination hearing she has been clean since December 1, 2017.

Following a hearing, the juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(g), (h), and (*l*) (2018). As noted, the mother appeals.

## II.    Standard of Review

Our review is de novo.[2] *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). Our primary consideration is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

---

[2] Included in the exhibits admitted in this case are exhibits and documents that originated in the CINA proceedings.

**III.     Analysis**

   A.     Sufficiency of the Evidence

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(g), (h), and (*l*).  "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).  As to termination under paragraph (h), the mother only challenges the State's establishment of the final element—that the child could not be returned to her care at the time of the termination hearing.  *See* Iowa Code § 232.116(1)(h)(4) (requiring "clear and convincing evidence that the child cannot be returned to the custody of the child's parents . . . at the present time"); *D.W.*, 791 N.W.2d at 707 (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").  Upon our de novo review of the record, we find the evidence to be clear and convincing that the child could not be returned to the mother's care at the time of the termination hearing.  The mother's testimony at the termination hearing largely indicated that she agreed she was not prepared to have the child in her care and custody at that time.  The evidence supports this indication.  The mother had yet to progress beyond fully-supervised visitation with the child.  In addition, she was still in the early stages of receiving substance-abuse treatment following roughly fifteen years of substance abuse with no prior treatment.  We conclude the State proved the statutory grounds for termination under section 232.116(1)(h) by clear and convincing evidence.

B.     Best Interests and Statutory Exception

In arguing termination is not in the best interests of the child, the mother does not address any of the statutory considerations courts examine in determining whether termination is in the best interests of the child. *See* Iowa Code § 232.116(2) ("[T]he court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."). Instead, she argues the child's best interests would be served by applying a statutory exception to termination because termination would be detrimental to the child due to the closeness of the parent-child relationship. *See id.* § 232.116(3)(c).

"[T]here is no all-encompassing best-interest standard." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" *In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (quoting *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000)). The mother's track record—which includes fifteen years of substance abuse—is not a good one. The mother has been using drugs since she was in high school; she is now approximately thirty years of age. A life of substance abuse is all this mother knows. Although we commend the mother for her recent sobriety of a few months, such sobriety can only be described as brief in comparison to her long history of substance abuse, and her submission to substance-abuse treatment was clearly in response to the State's petition to terminate her parental rights. "A parent cannot wait until the eve

of termination . . . to begin to express an interest in parenting." *C.B.*, 611 N.W.2d at 495. "We hold no crystal ball, and to some extent, the [best-interests] determination must be made upon past conduct." *In re M.M.*, No. 16-1685, 2016 WL 7395788, at *4 (Iowa Ct. App. Dec. 21, 2016). While we hope the mother prevails in her battle with substance abuse, "we cannot deprive a child of permanency after the State has proved a ground for termination" upon such sentiments. *See A.B.*, 815 N.W.2d at 777. The child has been out of the mother's care and in foster care his entire life. This child needs permanency and stability now. *See id.* at 778 ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997))). We find termination of the mother's parental rights is in this young child's best interests.

As to the statutory exception to termination cited by the mother, "[t]he court need not terminate the relationship between the parent and child if . . . there is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). The application of the statutory exceptions to termination is "permissive not mandatory." *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (quoting *A.M.*, 843 N.W.2d at 113). "[T]he parent resisting termination bears the burden to establish an exception to termination." *A.S.*, 906 N.W.2d at 476. The evidence presented does reveal the mother and child share a bond. However, no evidence was presented that "termination would be detrimental to the child" as a result of the severance of that bond. Iowa Code § 232.116(3)(c). Given the child's very young age and early removal from his mother's care, the effect termination

will have on him will be limited at most. We conclude the mother failed to meet her burden to establish the statutory exception to termination. *See A.S.*, 906 N.W.2d at 476.

C.   Extension

Next, the mother argues the juvenile court should have granted her additional time to work toward reunification in light of her recent sobriety and progress in substance-abuse treatment. If, following a termination hearing, the court does not terminate parental rights but finds there is clear and convincing evidence that the child is a child in need of assistance, the court may enter an order in accordance with section 232.104(2)(b). Iowa Code § 232.117(5). Section 232.104(2)(b) affords the juvenile court the option to continue placement of a child for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period."

The statute requires the court to determine the need for removal will no longer exist at the end of the extension. *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). The juvenile court was unable to make such a determination, concluding:

> The record is clear that [the mother] did not make any effort to meaningfully address case plan expectations and her substance abuse issues until mid-March 2018 when permanency was addressed. With [the mother's] lengthy substance abuse history, the court strongly believes that [the child] cannot be returned to her today or anytime in the near future despite her being in substance abuse treatment for approximately two months. [The mother] admitted [the child] could not be placed with her today. Further, the court concurs with [DHS] that [the mother's] sober date is not really 12/1/17, as self-reported by Amber. Her refusal to consistently drug test for the department leads this court to the conclusion that she has continued to use illegal substances throughout this case and that any date of sobriety is closer in time to her entry into substance abuse treatment.

While her participation in substance abuse treatment since the termination petition has been filed gives the court reason to be cautiously hopeful that [she] has committed to a sober lifestyle, this Court must look to the best interest of the child. Once the statutory timeframes for reunification have passed, permanency must be viewed with urgency, particularly with so young of a child. Thus, [the mother's] couple of months of sobriety must be weighed against 15 years of dependency without treatment. While this court commends [the mother] for getting into substance abuse treatment in the last few months prior to trial, it cannot conclude that this is due to any commitment to sobriety. This child cannot wait for [the mother] to grow up and get sober.

Upon our de novo review of the record, we are also unable to affirmatively conclude a need for removal would no longer exist after a six-month extension. The fact that the mother largely resisted and declined to meaningfully participate in substance-abuse-related services until a termination petition was filed, her eleventh-hour improvement, and the uncertainty about her ability to continue sobriety all militate against a conclusion the need for removal would no longer exist after an extension. *Cf. id.* at 93.

> There are a number of stern realities faced by a juvenile judge in any case of this kind. Among the most important is the relentless passage of precious time. The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems. Neither will childhood await the wanderings of judicial process. The child will continue to grow, either in bad or unsettled conditions or in the improved and permanent shelter which ideally, at least, follows the conclusion of a juvenile proceeding.
>
> The law nevertheless demands a full measure of patience with troubled parents who attempt to remedy a lack of parenting skills. In view of this required patience, certain steps are prescribed when termination of the parent-child relationship is undertaken under Iowa Code chapter 232. But, beyond the parameters of chapter 232, patience with parents can soon translate into intolerable hardship for their children.

*In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). The same reasoning controls the mother's request for an extension. We agree with the juvenile court that an extension of time is unwarranted.

## IV. Conclusion

We affirm the juvenile court order terminating the mother's parental rights.

**AFFIRMED.**